1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

|  |  |
|---|---|
| DONNA BRIM, on behalf of herself individually and on behalf of all others similarly situated, | Cause No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
|  | DEMAND FOR JURY TRIAL |
| v. |  |
| PRESTIGE CARE, INC., |  |
| Defendant. |  |

## INTRODUCTION

Plaintiff Donna Brim ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant Prestige Care, Inc. ("Prestige" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This class action arises out of the recent data breach ("Data Breach") involving Defendant, a healthcare corporation that provides skilled nursing, assisted living, and independent

CLASS ACTION COMPLAINT        - 1 -

living services to its customers in "Oregon, Washington, California, Nevada, Arizona, Idaho, Alaska & Montana."[1]

2.      Plaintiff brings this Complaint against Defendant for its failure to properly secure and safeguard the sensitive information that it collected and maintained as part of its regular business practices, including, but not limited to: names, Social Security numbers ("personally identifying information" or "PII") and medical and health insurance information, which is protected health information ("PHI," and collectively with Private Information, "Private Information") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

3.      Former and current Prestige residents and employees are required to entrust Defendant with sensitive, non-public Private Information, without which Defendant could not perform its regular business activities, in order to obtain employment or services from Prestige. Defendant retains this information for at least many years, even after its relationship with a resident or employee has ended.

4.      By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

5.      "On August 26, 2023, Prestige experienced a network security incident that involved an unauthorized party gaining access to [its] network environment."[2] Defendant subsequently "engaged a specialized third-party forensic incident response firm to assist with

---

[1] https://www.prestigecare.com/about-prestige/
[2]      The "Notice Letter". A sample copy is available at https://apps.web.maine.gov/online/aeviewer/ME/40/d71b6f68-8cda-420e-a064-64a3ae3dc47c.shtml

CLASS ACTION COMPLAINT          - 2 -

securing the network environment and investigating the extent of unauthorized activity."[3] As a result of its investigation, Prestige concluded, on an undisclosed date, that "an unauthorized third party may have accessed certain personal information during this incident."[4]

6.      According to Defendant's Notice of a Data Incident letter (the "Notice Letter"), the compromised Private Information included individuals' names, addresses, dates of birth, Social Security numbers, medical record numbers, health insurance policy numbers, and information about individuals' medical histories, mental and/or physical conditions, and/or medical diagnoses or treatments.[5]

7.      According to Defendant's reporting, the Private Information of approximately 38,000 individuals was compromised in the Data Breach.[6]

8.      Defendant failed to adequately protect Plaintiff's and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect residents' and employees' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] According to the breach report submitted to the Office of the Maine Attorney General, 38,087 persons were impacted in the Data Breach. *See* https://apps.web.maine.gov/online/aeviewer/ME/40/d71b6f68-8cda-420e-a064-64a3ae3dc47c.shtml

CLASS ACTION COMPLAINT       - 3 -

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

9.      Since the Data Breach started, Plaintiff and Class Members were unaware that their sensitive Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

10.     In breaching its duties to properly safeguard its residents' and employees' Private Information and give them timely, adequate notice of the Data Breach, Defendant was negligent and/or reckless in violation of federal and state statutes.

11.     Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

12.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and are entitled to injunctive and other equitable relief.

13.     Plaintiff and Class Members have suffered injuries as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii)

CLASS ACTION COMPLAINT        - 4 -

lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

14.    Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

15.    Plaintiff Donna Brim is and has been, at all relevant times, a resident and citizen of Molalla, Oregon.

16.    Defendant Prestige Care, Inc. is a healthcare corporation incorporated under the state laws of Washington, with its principal place of business located in Vancouver, Washington.

## JURISDICTION AND VENUE

17.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom reside outside the state of Washington and have different citizenship from Defendant, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A)

CLASS ACTION COMPLAINT          - 5 -

18.     This Court has jurisdiction over Defendant because Defendant operates and maintains its principal place of business in this District.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) because Defendant's principal place of businesses is located in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant has harmed Class Members residing in this District.

## **BACKGROUND**

***Defendant's Business***

20.     Defendant is a healthcare corporation that provides skilled nursing, assisted living, and independent living services to its customers in "Oregon, Washington, California, Nevada, Arizona, Idaho, Alaska & Montana."[7]

21.     Plaintiff and Class Members are current and former Prestige residents and/or employees.

22.     In order to obtain employment or residency at Prestige, Plaintiff and Class Members were required to provide Prestige with sensitive and confidential Private Information, including their names, Social Security number, and health information.

23.     The information held by Defendant in its computer systems included the unencrypted Private Information of Plaintiff and Class Members.

24.     Upon information and belief, Defendant made promises and representations to its residents and employees, including Plaintiff and Class Members, that the Private Information collected from them as a condition of obtaining employment at Prestige would be kept safe and

---

[7] https://www.prestigecare.com/about-prestige/

CLASS ACTION COMPLAINT          - 6 -

confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

25.     Indeed, Defendant provides on its website that: "[a]t Prestige Care Inc. . . . . we take your privacy seriously."

26.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

27.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on Defendant's sophistication to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

28.     Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep its residents' and employees' Private Information safe and confidential.

29.     Defendant had obligations under the FTC Act, HIPAA, contract, and industry standards to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

30.     Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without that Private Information, Defendant could not perform the services it provides.

CLASS ACTION COMPLAINT          - 7 -

31.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties to Plaintiff and Class Members, and it knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

### The Data Breach

32.     On or about January 31, 2024, Defendant began sending Plaintiff and other victims of the Data Breach a Notice of a Security Incident letter, informing them that:

> **What Happened?** On or around September 7, 2023, Prestige Care became aware of suspicious activity on our computer network. Prestige Care launched an investigation and determined that our network had been infected with malware, which prevented access to certain files on the system. Through our investigation, we determined that, an unauthorized actor may have had access to certain systems that stored personal and health information on September 7, 2023. Prestige Care is undertaking an extensive and time intensive review of what information was potentially impacted and to whom that information relates. On December 18, 2023, Prestige Care determined that information related to certain current former employees and residents was present in its systems. Although we have no evidence of any identity theft or fraud in connection with this incident, Prestige Care began providing notice to those individuals whose information was present in its systems.
>
> **What Information Was Involved?** Our investigation determined the following types of your information may have been impacted by this incident: Social Security number, health insurance information, and medical information, and your name.[8]

33.     Omitted from the Notice Letter were the dates of the Data Breach, the dates of Defendant's investigation, the details of the root cause of the Data Breach, the vulnerabilities exploited, any explanation as to why it took Defendant more than two months after the Data Breach to inform impacted individuals of the Data Breach, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

---

[8] Notice Letter.

CLASS ACTION COMPLAINT          - 8 -

34.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

35.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, , such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

36.     The attacker accessed and acquired files in Defendant's computer systems containing unencrypted Private Information of Plaintiff and Class Members, including their names, Social Security numbers, health insurance information, and medical information. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

37.     Plaintiff further believes that her Private Information and that of Class Members was or will be sold on the dark web, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

**Data Breaches Are Preventable**

38.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[9]

39.     To prevent and detect cyber-attacks and/or ransomware attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

---

[9] *See* How to Protect Your Networks from RANSOMWARE at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

CLASS ACTION COMPLAINT         - 9 -

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

CLASS ACTION COMPLAINT        - 10 -

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[10]

40. To prevent and detect cyber-attacks or ransomware attacks Prestige could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins],        and [information technology] admins to configure servers and other      endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and      use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection

---

[10] *Id.* at 3–4.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

-       Turn on attack surface reduction rules and [Antimalware Scan
        Interface] for Office[Visual Basic for Applications].[11]

41.     Given that Defendant was storing the sensitive Private Information of its current
and former residents, Defendant could and should have implemented all of the above measures to
prevent and detect cyberattacks.

42.     The occurrence of the Data Breach indicates that Defendant failed to adequately
implement one or more of the above measures, resulting in the Data Breach and the exposure of
the Private Information of more than thirty thousand individuals, including that of Plaintiff and
Class Members.

### Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information

43.

44.     Defendant could have prevented this Data Breach by properly securing and
encrypting the files and file servers containing the Private Information of Plaintiff and Class
Members.

45.     Defendant's negligence in safeguarding the Private Information of Plaintiff and
Class Members is exacerbated by the repeated warnings and alerts directed to protecting and
securing sensitive data.

### Defendant Knew, Or Should Have Known, of the Risk of a Data Breach Because Healthcare Entities In Possession of Private Information Are Particularly Susceptible.

46.     Data thieves regularly target companies like Defendant due to the highly sensitive
information that they custody. Defendant knew and understood that unprotected Private

---

[11] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:*
https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

CLASS ACTION COMPLAINT          - 12 -

Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

47.    Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities that collect and store Private Information and other sensitive information, like Defendant, before the Breach.

48.    In the third quarter of the 2023 fiscal year alone, 7,333 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised.[12]

49.    In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million residents, March 2019), University of Washington Medicine (974,000 residents, December 2018), Florida Orthopedic Institute (640,000 residents, July 2020), Wolverine Solutions Group (600,000 residents, September 2018), Oregon Department of Human Services (645,000 residents, March 2019), Elite Emergency Physicians (550,000 residents, June 2020), Magellan Health (365,000 residents, April 2020), and BJC Health System (286,876 residents, March 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

50.    As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

51.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

---

[12] *See* https://www.idtheftcenter.org/publication/q3-data-breach-2023-analysis/ (last accessed Oct. 11, 2023).

CLASS ACTION COMPLAINT         - 13 -

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

52.     Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store Private Information are "attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[13]

53.     Additionally, as companies became more dependent on computer systems to run their business,[14] *e.g.*, working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[15]

54.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

55.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to over thirty thousand individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[13]     https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection.

[14]     https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html

[15]     https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022

CLASS ACTION COMPLAINT       - 14 -

56.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

57.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen—particularly Social Security numbers and PHI—fraudulent use of that information and damage to victims may continue for years.

58.    As a healthcare entity in possession of its current and former residents' and employees' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

*Value of Private Information*

59.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[16] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[17]

---

[16] 17 C.F.R. § 248.201 (2013).
[17] *Id.*

CLASS ACTION COMPLAINT        - 15 -

60.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[18]

61.    For example, Personal Information can be sold at a price ranging from $40 to $200.[19]

62.    Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

63.    PII can sell for as much as $363 per record according to the Infosec Institute.[21] PII is particularly valuable because criminals can use it to target victims with frauds and scams.

64.    Theft of PHI is gravely serious: a thief may use your "name, Social Security number, health insurance account number, or Medicare number[]to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care. If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to use. It could also hurt your credit."[22]

---

[18] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[19] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), *available at* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[20] *In the Dark*, VPNOverview, *available at* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

[21] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Sept. 5, 2023).

[22] *What To Know About Medical Identity Theft,* Federal Trade Commission (May 2021), *available at* https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft.

CLASS ACTION COMPLAINT        - 16 -

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

65.     According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[23]

66.     The information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, Social Security number, and PHI.

67.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[24]

68.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

69.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

---

[23] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content

[24] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

CLASS ACTION COMPLAINT        - 17 -

continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

70.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

### *Defendant Fails to Comply with FTC Guidelines*

71.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

72.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal employee information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[26]

73.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[27]

---

[25] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf ("GAO Report").
[26] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[27] *Id.*

CLASS ACTION COMPLAINT        - 18 -

74.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

75.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

76.    These FTC enforcement actions include actions against healthcare entities, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

77.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

78.    Defendant failed to properly implement basic data security practices.

CLASS ACTION COMPLAINT          - 19 -

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

79.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to its residents' and employees' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

80.     Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its residents and employees. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### Defendant Fails to Comply with HIPAA Guidelines

81.     Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

82.     Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[28] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

83.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

---

[28] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

CLASS ACTION COMPLAINT        - 20 -

84.     HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

85.     HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

86.     "Electronic protected health information" is "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

87.     HIPAA's Security Rule requires Defendant to do the following:

       a.      Ensure the confidentiality, integrity, and availability of all
       electronic protected health information the covered entity or
       business associate creates, receives, maintains, or transmits;

       b.      Protect against any reasonably anticipated threats or hazards to
       the security     or integrity of such information;

       c.      Protect against any reasonably anticipated uses or disclosures of
       such information that are not permitted; and

       d.      Ensure compliance by its workforce.

88.     HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to

CLASS ACTION COMPLAINT          - 21 -

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

89.    HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

90.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[29]

91.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

92.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

93.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost

---

[29] Breach Notification Rule, U.S. Dep't of Health & Human Services, available at https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ♦ FAX 206.682.2992

effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[30] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[31]

### Defendant Fails to Comply with Industry Standards

94.    As noted above, experts studying cyber security routinely identify entities in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information that they collect and maintain.

95.    Industry professional have identified several best practices that, at a minimum, should be implemented by healthcare entities in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

96.    Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such

---

[30] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.
[31] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html

CLASS ACTION COMPLAINT         - 23 -

as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

97.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

98.    These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and upon information and belief, Defendant failed to comply with at least one––or all––of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**<u>COMMON INJURIES & DAMAGES</u>**

99.    As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

### The Data Breach Increases Victims' Risk of Identity Theft

100.    The unencrypted Private Information of Class Members will end up for sale on the dark web, as that is the *modus operandi* of hackers.

101.    Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. Simply, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

102.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

103.    Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

104.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

105.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

106.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[32]

107.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

---

[32] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

108.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

109.    The existence and prevalence of "Fullz" packages means that the Private Information stolen in the Data Breach can easily be linked to the unregulated data (like phone numbers and emails) of Plaintiff and the other Class Members.

110.    Thus, even if certain information (such as Social Security numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

### *Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

111.    As a result of the recognized risk of identity theft, when a Data Breach occurs and an individual is notified by a company that their Private Information was compromised (as in this Data Breach), the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

112.    Thus, due to the actual and imminent risk of identity theft, Defendant instructs Plaintiff and Class Members to do the following: "[w]e encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity."[33]

113.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter, as well as monitoring their financial accounts for any indication of fraudulent activity, which may take years to detect.

114.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[34]

115.    Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[35]

116.    And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches

---

[33] Notice Letter.
[34] *See* GAO Report, *supra* n.25.
[35] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited July 7, 2022).

CLASS ACTION COMPLAINT        - 28 -

in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[36]

### DIMINUTION OF VALUE OF PII AND PHI

117.    PII and PHI are valuable property rights.[36] Their value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

118.    Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.[37]

119.    An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.[38]

120.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker, who in turn aggregates the information and provides it to marketers or app developers.[39,40]

121.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[41]

---

[36] *See* GAO Report, *supra* n.25.

[37] *See, e.g.*, Randall T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3–4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[38] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

[39] https://www.latimes.com/business/story/2019-11-05/column-data-brokers

[40] https://datacoup.com/

[41] https://digi.me/what-is-digime/

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

122.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

123.    At all relevant times, Prestige knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

124.    The fraudulent activity resulting from the Data Breach may not come to light for years.

125.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information .

126.    Prestige was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to over thirty thousand individuals' Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

127.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

CLASS ACTION COMPLAINT          - 30 -

1

*Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary*

2

128.    Given the type of targeted attack in this case, sophisticated criminal activity, the

3

type of Private Information involved, and the volume of Private Information impacted in the Data

4

Breach, there is a strong probability that entire batches of stolen information have been placed, or

5

will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize

6

the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims'

7

names to make purchases or to launder money; file false tax returns; take out loans or lines of

8

credit; or file false unemployment claims.

9

129.    Such fraud may go undetected until debt collection calls commence months, or even

10

years, later. An individual may not know that his or her Private Information was used to file for

11

unemployment benefits until law enforcement notifies the individual's employer of the suspected

12

fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax

13

return is rejected.

14

130.    Consequently, Plaintiff and Class Members are at an increased risk of fraud and

15

identity theft for many years into the future.

16

131.    The retail cost of credit monitoring and identity theft monitoring can cost around

17

$200 a year per Class Member. This is reasonable and necessary cost to monitor to protect Class

18

Members from the risk of identity theft that arose from Defendant's Data Breach.

19

*Loss of Benefit of the Bargain*

20

132.    Furthermore, Defendant's poor data security deprived Plaintiff and Class Members

21

of the benefit of their bargain. When agreeing to become a resident and/or employee at Defendant

22

under certain terms, Plaintiff and other reasonable consumers understood and expected that they

23

were either (a) being paid less as an employee, or (2) paying more as a resident in order to for

24

25

26

27

28

CLASS ACTION COMPLAINT         - 31 -

Defendant to provide the necessary data security to protect their Private Information. In fact, Prestige did not provide the expected data security. Accordingly, Plaintiff and Class Members received employment positions or residential care that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

## PLAINTIFF BRIM'S EXPERIENCE

133.    Plaintiff Brim is a former Prestige employee who worked there from approximately 2012 through 2016.

134.    In order to obtain employment from Defendant, she was required to provide her Private Information to Defendant, including her name, Social Security number, health insurance information, and medical information.

135.    At the time the Data Breach was discovered—on or around September 7, 2023—Prestige retained Plaintiff Brim's Private Information in its system.

136.    Plaintiff Brim is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

137.    Plaintiff Brim received the Notice Letter, by mail, directly from Defendant, dated January 31, 2024. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties, including her name, Social Security number, health insurance information, and medical information.

138.    As a result of the Data Breach, and at the direction of Defendant's Notice Letter—which instructs Plaintiff to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

activity"[42]—Plaintiff Brim made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching and verifying the Data Breach upon receiving the Notice Letter, as well as monitoring her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff has spent significant time dealing with the Data Breach— valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

139.    Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

140.    The Data Breach has caused Plaintiff Brim to suffer fear, anxiety, and stress, which has been compounded by the fact that Prestige has still not fully informed her of key details about the Data Breach's occurrence.

141.    As a result of the Data Breach, Plaintiff Brim anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data

---

[42] Notice Letter.

CLASS ACTION COMPLAINT        - 33 -

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

Breach. As a result of the Data Breach, Plaintiff Brim is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ALLEGATIONS

142.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

143.    The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**
All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in January 2024 (the "Class").

144.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

145.    Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

146.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. According to the breach report submitted to the Office of the Maine Attorney General, 38,087 persons were impacted in the Data Breach.[43] The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals (as evidenced by sending them breach notification letters).

---

[43] https://apps.web.maine.gov/online/aeviewer/ME/40/d71b6f68-8cda-420e-a064-64a3ae3dc47c.shtmlThe

CLASS ACTION COMPLAINT          - 34 -

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

147.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

    a.   Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

    b.   Whether Defendant had respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

    c.   Whether Defendant had respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

    d.   Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

    e.   Whether and when Defendant actually learned of the Data Breach;

    f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

    g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

    h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.   Whether Defendant adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

    j.   Whether Defendant's conduct was unfair or deceptive, or both;

CLASS ACTION COMPLAINT    - 35 -

k.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

148.  <u>Typicality:</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

149.  <u>Policies Generally Applicable to the Class:</u> This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

150.  <u>Adequacy:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members, and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

151.  <u>Superiority:</u> Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a

CLASS ACTION COMPLAINT        - 36 -

large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

152.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

153.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

154.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

155.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

156.    Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

157.    Likewise, particular issues under Rule 23(b)(3) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant failed to timely notify the Plaintiff and the class of the Data Breach;

b.    Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.    Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.    Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.    Whether Defendant's conduct was unfair or deceptive, or both;

f.    Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and Whether adherence to FTC data security

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

### COUNT I
**Negligence**
**(On Behalf of Plaintiff and the Class)**

158.    Plaintiff realleges and incorporates by reference all of the above paragraphs, as if fully set forth herein.

159.    Defendant requires its residents and employees, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing its services.

160.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its residents and employees, which solicitations and services affect commerce.

161.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

162.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

163.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

a breach of its security systems in a reasonably expeditious time and to give prompt notice to those affected in the case of a data breach.

164.     Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

165.     Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

166.     For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. Defendant did not begin to notify Plaintiff or Class Members of the Data Breach until January 31, 2024, despite, upon information and belief, Defendant knowing shortly after September 7, 2023 that unauthorized persons had accessed and acquired the private, protected, personal information of Plaintiff and the Class.

167.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

168.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its residents and employees. That

CLASS ACTION COMPLAINT          - 40 -

special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of being residents and employees of Defendant.

169.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

170.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

171.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former residents' and employees' Private Information it was no longer required to retain pursuant to regulations.

172.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

173.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

174.    Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.    Failing to adequately monitor the security of its networks and systems;

c.    Allowing unauthorized access to Class Members' Private Information;

d.    Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e.    Failing to remove former residents' and employes' Private Information it was no longer required to retain pursuant to regulations,

f.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

g.    Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

175.    Defendant violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

176.    Plaintiff and the Class are within the class of persons that the FTC Act and HIPAA were intended to protect.

177.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

CLASS ACTION COMPLAINT        - 42 -

178.    Defendant's violation of Section 5 of the FTC Act and HIPAA constitutes negligence.

179.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

180.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

181.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the Data Breach was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

182.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

183.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

184.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

CLASS ACTION COMPLAINT          - 43 -

185.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

186.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

187.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

188.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

189.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

190.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

191.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

192.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

193.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

194.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

195.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

//

//

//

CLASS ACTION COMPLAINT         - 45 -

1

2

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

3

4

196.    Plaintiff realleges and incorporates by reference all of the above paragraphs, as if

fully set forth herein.

5

6

7

197.    Plaintiff and Class Members were required to provide their Private Information to

Defendant as a condition of obtaining employment with or residency at Defendant.

8

9

10

11

12

13

198.    Plaintiff and the Class entrusted their Private Information to Defendant. In so doing,

Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed

to safeguard and protect such information, to keep such information secure and confidential, and

to timely and accurately notify Plaintiff and the Class if their data had been breached and

compromised or stolen.

14

15

16

17

18

19

20

21

22

199.    Implicit in the agreement between Plaintiff and Class Members and the Defendant

to provide Private Information, was the latter's obligation to: (a) use such Private Information for

business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent

unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with

prompt and sufficient notice of any and all unauthorized access and/or theft of their Private

Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class

Members from unauthorized disclosure or uses, (f) retain the Private Information only under

conditions that kept such information secure and confidential.

23

24

200.    The mutual understanding and intent of Plaintiff and Class Members on the one

hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

25

26

27

28

CLASS ACTION COMPLAINT          - 46 -

201.    Defendant solicited, offered, and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

202.    In accepting the Private Information of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the Private Information from unauthorized access or disclosure.

203.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would disclose Private Information only under certain circumstances, none of which relate to the Data Breach.

204.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

205.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

206.    Plaintiff and Class Members paid money to Defendant, or received less money from Defendant, with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

207.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 ● FAX 206.682.2992

208.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

209.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

210.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

211.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

212.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

213.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

<u>**COUNT III**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

214.    Plaintiff realleges and incorporates by reference all of the above paragraphs, as if fully set forth herein.

CLASS ACTION COMPLAINT         - 48 -

215.    Plaintiff brings this claim in the alternative to the breach of implied contract claim above.

216.    Plaintiff and Class Members conferred a monetary benefit on Defendant by providing Defendant with their labor and/or their Private Information to Defendant.

217.    Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

218.    However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof.

219.    Specifically, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

220.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

221.    Defendant acquired Plaintiff's and Class Members' Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

222.    If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant or obtained employment at Defendant.

CLASS ACTION COMPLAINT            - 49 -

223.    Plaintiff and Class Members have no adequate remedy at law.

224.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

225.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

226.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## COUNT IV
### Violation of the Washington Consumer Protection Act, RCW 19.86
### (On Behalf of Plaintiff and the Class)

227.    Plaintiff realleges and incorporates by reference all of the above paragraphs, as if fully set forth herein.

CLASS ACTION COMPLAINT          - 50 -

228.    The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA")

prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as

those terms are described by the CPA and relevant case law.

229.    Defendant is a "person" as described in RCW 19.86.010(1).

230.    Defendant engages in "trade" and "commerce" as described in RCW 19.86.010(2)

in that it engages in the sale of services and commerce directly and indirectly affecting the

people of the State of Washington.

231.    By virtue of the above-described wrongful actions, inaction, omissions, and want

of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in

unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in

that Defendant's practices were injurious to the public interest because they injured other

persons, had the capacity to injure other persons, and have the capacity to injure other persons.

232.    Defendant's failure to safeguard the Private Information exposed in the Data

Breach constitutes an unfair act that offends public policy.

233.    Defendant's failure to safeguard the Private Information compromised in the Data

Breach caused substantial injury to Plaintiff and Class Members. Defendant's failure is not

outweighed by any countervailing benefits to consumers or competitors, and it was not

reasonably avoidable by consumers.

234.    Defendant's failure to safeguard the Private Information disclosed in the Data

Breach, and its failure to provide timely and complete notice of that Data Breach to the victims,

is unfair because these acts and practices are immoral, unethical, oppressive, and/or

unscrupulous.

CLASS ACTION COMPLAINT        - 51 -

235.     In the course of conducting its business, Defendant committed "unfair or deceptive acts or practices" by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' Private Information, and violating the common law alleged herein in the process. Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. As described above, Defendant's wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

236.     Defendant also violated the CPA by failing to timely notify, and by concealing from Plaintiff and Class Members, information regarding the unauthorized release and disclosure of their Private Information. If Plaintiff and Class Members had been notified in an appropriate fashion, and had the information not been hidden from them, they could have taken precautions to safeguard and protect their Private Information.

237.     Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or deceptive acts or practices" in violation of the CPA in that Defendant's wrongful conduct is substantially injurious to other persons, had the capacity to injure other persons, and has the capacity to injure other persons.

238.     The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

CLASS ACTION COMPLAINT          - 52 -

239.    Defendant's unfair or deceptive acts or practices occurred in its trade or business and have and injured and are capable of injuring a substantial portion of the public. Defendant's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

240.    As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the CPA, Plaintiff and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*, (1) an imminent, immediate and the continuing increased risk of identity theft, identity fraud— risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their Private Information; (4) deprivation of the value of their Private Information, for which there is a well-established national and international market; and/or (5) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages.

241.    Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of herself and the Class, seek restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the Private Information entrusted to it.

242.    Plaintiff, on behalf of herself and Class members, also seek to recover actual damages sustained by each Class member together with the costs of the suit, including reasonable

CLASS ACTION COMPLAINT        - 53 -

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

attorney fees. In addition, Plaintiff, on behalf of herself and Class Members, request that this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each Class member by three times the actual damages sustained not to exceed $25,000.00 per Class member.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.  An order certifying the Class, as defined herein, and appointing  Plaintiff and her Counsel to represent the Class;

B.  Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures  to Plaintiff and Class Members;

C.     Injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and  unlawful acts described herein;

ii.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

iii.  requiring Defendant to delete, destroy, and purge the personal  identifying information of Plaintiff and Class Members unless  Prestige can provide to the Court reasonable justification for  the retention and use of such information when weighed against  the privacy interests of Plaintiff and Class Members;

CLASS ACTION COMPLAINT          - 54 -

iv.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v.  prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.  requiring Defendant to conduct regular database scanning and securing checks;

xi.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided   as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

CLASS ACTION COMPLAINT        - 55 -

xii.  requiring Defendant to conduct internal training and education routinely and continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.  requiring Defendant to implement, maintain, regularly review,  and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and  updated;

xv.  requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their Private Information to third parties, as well as the steps affected individuals must take to protect Themselves;

xvi.  requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvii.    for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
TEL. 206.682.5600 • FAX 206.682.2992

D.      An award of damages, including actual, statutory, nominal, and

consequential damages, as allowed by law in an amount to be

determined;

E.      An award of attorneys' fees, costs, and litigation expenses, as

allowed by law;

F.      Prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: February 16, 2024                    Respectfully Submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By: *s/Kaleigh N. Boyd*
   Kaleigh N. Boyd, WSBA No. 52684
   1200 Fifth Avenue, Suite 1700
   Seattle, WA 98101
   Telephone: 206-682-5600
   Facsimile: 206-682-2992
   kboyd@tousley.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiff and*
*Proposed Class Counsel*

**Pro Hac Vice* application forthcoming

CLASS ACTION COMPLAINT              - 57 -