Hon. Benjamin H. Settle

# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### TACOMA DIVISION

| | |
|---|---|
| DONNA BRIM, KIMBERLY PERRY, AND JANET TURNER LAMONICA, as individuals and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>vs.<br><br>PRESTIGE CARE, INC.<br><br>　　　　　Defendant. | Case No. 3:24-cv-05133-BHS<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>November 25, 2024 |

## I.    INTRODUCTION

Plaintiffs Donna Brim, Kimberly Perry, and Janet Turner Lamonica submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant, Prestige Care, Inc. ("Prestige Care" or "Defendant") does not oppose certification of the Settlement Class solely for purposes of facilitating the settlement sought to be approved in this motion, and it does not oppose the relief sought in this motion. Plaintiffs strongly believe the Settlement is fair, reasonable, and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

## II.    STATEMENT OF FACTS

This matter is a putative class action arising out of a data breach of Prestige Care's computer systems that Prestige Care discovered on or about September 7, 2023 (the "Data Incident"). During the Data Incident, an unauthorized actor gained access to certain files on Prestige Care's network; those files contained information related to certain individuals, including, but not limited to, names and Social Security Numbers (personally identifiable information or "PII") as well as medical treatment and health insurance information (protected health information or "PHI") (collectively, "Personal Information").

After Prestige Care learned of the Data Incident, it notified approximately 45,000 current and former patients and employees that their Personal Information may have been impacted by the Data Incident. Plaintiffs brought this action on behalf of all persons whose Personal Information may have been compromised, alleging claims based on Prestige Care's failure to: (i) adequately protect PII and PHI; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs asserted claims of (i) negligence, (ii) breach of implied contract, (iii) breach of fiduciary duty, (iv) unjust

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 1
Case No. 3:24-cv-05133-BHS

1  enrichment, (v) declaratory judgment, and (vi) violations of the Washington State Consumer

2  Protection Act, RCW 19.86.010, *et seq*.

3       Prestige Care denies each and all of the claims and contentions alleged against it in the

4  Litigation. Prestige Care denies all wrongdoing or liability associated with the Data Incident that

5  Plaintiffs alleged, or which could be alleged, in the Litigation.  Nonetheless, Prestige Care has

6  concluded that further conduct of the Litigation would be protracted and expensive, and that it is

7  desirable that the Litigation be fully and finally settled in the manner and upon the terms and

8  conditions set forth in this Settlement Agreement.

9  ## III.    PROCEDURAL HISTORY

10       After Prestige Care sent its notice, three lawsuits were filed in federal court against

11  Prestige Care concerning the Data Incident: *Brim v. Prestige Care, Inc.*, Case No. 3:24-cv-05133-

12  BHS; *Perry v. Prestige Care, Inc.*, Case No. 3:24-cv-05151-SKV; and *Lamonica v. Prestige

13  Care, Inc.*, Case No. 3:24-cv-05203-MLP. On April 1, 2024, the cases were consolidated under

14  the title *Brim v. Prestige Care, Inc.*, Case No. 3:24-cv-05133-BHS (the "Action"), and appointed

15  Kaleigh N. Boyd of Tousley Brain Stephens PLLC as Interim Lead Counsel. On April 30, 2024,

16  the plaintiffs filed a Consolidated Amended Class Action Complaint.

17       Over the course of several months, the Parties engaged in settlement negotiations. The

18  parties then agreed to participate in early mediation and prior to doing so, informally exchanged

19  discovery on a variety of topics related to the Litigation. On August 19, 2024, the Parties

20  participated in an arm's-length, full day, mediation session with the Honorable Ronald B.

21  Leighton (Ret.); through the assistance of the mediator, the parties reached a settlement in

22  principle.

23       In the months following the mediation, the Settling Parties continued to discuss the finer

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 2
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

points of the Settlement and draft and finalize the Settlement and Settlement Agreement for which Plaintiffs seek preliminary approval today.

## IV.  THE SETTLEMENT TERMS

### A.  Proposed Settlement Class

The Proposed Settlement will provide substantial relief for the Settlement Class, which is defined as: "all individuals whose Personal Information was potentially compromised in the Data Incident." Settlement Agreement[1] ("S.A.") ¶ 1.25. The Settlement Class contains approximately 45,000 individuals.

### B.  Settlement Benefits – Monetary Relief

Settlement Class Members may claim (a) defined relief of up to $400 in Out-of-Pocket Losses, up to $100 in Lost Time, and/or up to $5,000 in Consequential Damages OR (b) a $50 Alternative Cash Payment. Monetary Relief is subject to an aggregate cap of $700,000. *Id.* ¶ 2.1. In addition to monetary relief, Settlement Class Members are eligible to claim three years of credit monitoring and identity theft protection services, as set forth below.

#### 1.  Out-of-Pocket Losses.

The first category of payments is designed to provide reimbursement for ordinary out-of-pocket expenses related to the Data Incident. *Id.* ¶ 2.1.1(a). All Settlement Class Members who submit a Valid Claim using the Claim Form are eligible for any documented and attested-to out-of-pocket expenses directly associated with dealing with the Data Incident, not to exceed $400 per Settlement Class Member, that were incurred more likely than not as a result of the Data Incident, including but not limited to (i) unreimbursed expenses, charges and/or losses relating to fraud or identity theft such as unreimbursed bank fees; long distance phone charges; cell phone

---

[1] A copy of the Settlement Agreement is attached as Exhibit B to the Boyd Dec.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 3
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

charges (only if charged by the minute); data charges (only if charged based on the amount of data used); postage; gasoline for local travel; fees for credit repair or similar services; and costs associated with freezing or unfreezing credit; and/or any other charge or loss reasonably related to the Data Incident incurred by Class Members between September 7, 2023 and the Claims Deadline. To receive reimbursement for out-of-pocket losses, Settlement Class Members must submit a Valid Claim, including supporting documentation, to the Claims Administrator. *Id.*

### 2. Lost Time.

Class Members are also eligible to receive reimbursement for up to four hours of lost time spent dealing with the Data Incident, rounded to the nearest whole hour, calculated at the rate of $25 per hour. *Id.* ¶ 2.1.1(b). Class Members may receive up to four hours of lost time if the Class Member attests that any claimed lost time was spent responding to issues raised by the Data Incident, and briefly describes how the lost time was spent. Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses. *Id.*

### 3. Consequential Damages

Class Members are also eligible to receive reimbursement for documented extraordinary out-of-pocket losses, not to exceed $5,000 per Class Member for documented monetary loss that (i) is actual, documented, and unreimbursed; (ii) was more likely than not caused by the Data Incident; (iii) occurred between September 7, 2023 to the Claims Deadline; (iv) results from actual identity theft, fraud or similar criminal victimization; and (v) is not already covered by one or more of the above-referenced reimbursed expenses. *Id.* ¶ 2.1.1(c). Class Members must also provide documentation that he or she made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 4
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 4. Alternative Cash Payment

As an alternative to the other forms of monetary relief and credit monitoring Settlement Class Members may elect a one time $50 cash payment. *Id.* ¶ 2.1.2.

### 5. Credit Monitoring and Identity Theft Protection

In addition to, and regardless of whether they submit a claim for monetary relief, Settlement Class Members may claim three (3) years of one-bureau credit monitoring and identity theft protection services through IDX. The identity theft monitoring will include identity theft insurance of at least $1 million. Settlement Class Members who elect to receive an Alternative Cash Payment are not eligible to claim Credit Monitoring and Identity Theft Protection. *Id.* ¶ 2.2.

**C.      Class Notice and Settlement Administration**

The Costs of Claims Administration will be paid for by Prestige Care separate and apart from other benefits to the Settlement Class Members. *Id.*¶ 2.5. Notice will be given to the Settlement Class via individual notice, which will be given by mailing the Short-Form notice (Exhibit A to the Settlement Agreement) to the last known mailing address for Settlement Class Members. *Id.* ¶ 3.2.1. A Long Notice, attached to the Settlement Agreement as Exhibit B, will also be posted on the settlement website, which will be established by the Claims Administrator within 30 days of the entry of the Preliminary Approval Order (the "Notice Deadline"), along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. *Id.* ¶ 1.15. The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Furthermore, a toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 5
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Members' inquiries. *Id.* ¶ 3.2.4.

Moreover, Defendant has retained EisnerAmper, a nationally recognized and well-regarded class action settlement administrator, to serve as Claims Administrator, subject to the Court's approval. *See* Declaration of Kaleigh N. Boyd ("Boyd Dec."), ¶ 14.

**D.    Attorneys' Fees and Expenses**

If the Settlement is preliminarily approved, proposed Class Counsel plan to petition the Court for an award of reasonable attorneys' fees and costs after the Settlement Class has received notice of the Settlement. Plaintiffs will file a motion seeking an award of reasonable attorneys' fees as well as reimbursement of their reasonable costs and litigation expenses incurred. S.A. ¶ 3.6. As will be further explained in that motion, Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size.

**E.    Service Awards to Named Plaintiffs**

Plaintiffs in this case have been vital in litigating this matter, including providing important information about the impact of the Data Breach to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Boyd Dec., ¶ 12. Plaintiffs will separately petition the Court for awards of $2,500 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. S.A. ¶ 3.6.3.

The amount requested here is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g.*, *Pauley v. CF Entertainment*, 2020 WL 5809953, at *4 (C.D. Cal.) (granting "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," and finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, No. 13-CV-4980,

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 6
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

**F.    Release**

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A., generally.  "Released Claims" are defined, *inter alia*, as:

> any and all past, present, and future rights, liabilities, actions, demands, damages, penalties, costs, attorneys' fees, losses, remedies, claims, and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; violations of Washington State Consumer Protection Act and other state consumer protection statutes; violations of any federal or state data breach notification statute; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, existing or potential, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal statutory, or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Parties based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class consistent with the terms and requirements of this Agreement. Released Claims shall not include any claims for medical malpractice that Plaintiffs and Settlement Class Members have, or may have in the future, against Prestige Care.

S.A. ¶ 1.22.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 7
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  **V.    LEGAL AUTHORITY**

2        Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which

3  court approval is required to finalize a class action settlement. Courts, including those in this

4  Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary

5  approval of the proposed settlement followed by (2) dissemination of court-approved notice to

6  the class and (3) a final fairness hearing at which class members may be heard regarding the

7  settlement and at which evidence may be heard regarding the fairness, adequacy, and

8  reasonableness of the settlement. *Manual for Complex Litigation* (Fourth) (2004) § 21.63.

9        Here, Plaintiffs request that the Court take the first step and grant preliminary approval

10  of the proposed Settlement Agreement.

11  **VI.   ARGUMENT**

12        Federal courts strongly favor and encourage settlements, particularly in class actions and

13  other complex matters where the inherent costs, delays, and risks of continued litigation might

14  otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v.*

15  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors

16  settlements, particularly where complex class action litigation is concerned"); 4 Newberg on

17  Class Actions § 11.41 (4th ed. 2002) (citing cases).  Forcing claims like those at issue here to be

18  handled through individual litigation would unduly tax the court system, require massive

19  expenditures of resources, and would be impracticable given the relatively small value of the

20  claims of the individual class members. Thus, the Settlement provides the best vehicle for

21  Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient

22  manner.

23        The Manual for Complex Litigation (Fourth) advises that in cases presented for both

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 8
Case No. 3:24-cv-05133-BHS

preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Plaintiffs here seek certification of a Settlement Class consisting of: "all individuals whose Personal Information was potentially compromised in the Data Incident." S.A. ¶ 1.25. The Settlement Class specifically excludes: (i) Prestige Care, and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the presiding judge, and his or her staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.* The Settlement Class contains approximately 45,000 individuals.

For the reasons set forth below, the Court should certify the Class for settlement purposes and preliminarily approve the Settlement.

### A.     The Settlement Satisfies Rule 23(a).

Before assessing the parties' settlement, the Court should first confirm the underlying

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 9
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

### i.    The proposed Class is sufficiently numerous.

While there is no fixed point at which the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). Numbering approximately 45,000 individuals, the proposed settlement class easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is clearly impracticable—thus the numerosity prong is satisfied.

### ii.    The Settlement Class Satisfies the Commonality Requirement.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). For the same reason, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 10
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

[who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, *inter alia*, whether Prestige Care engaged in the wrongful conduct alleged; whether Class Members' Personal Information was compromised in the Data Incident; whether Prestige Care owed a duty to Plaintiffs and Class members; whether Prestige Care breached its duties; and whether Prestige Care unreasonably delayed in notifying Plaintiffs and class members of the material facts of the Data Incident.

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

iii.    <u>Plaintiffs' claims and defenses are typical to those of the Settlement Class.</u>

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect the Personal Information of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Personal Information was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Thus, typicality has been met.

iv.    <u>Plaintiffs will adequately protect the interests of the Class.</u>

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 11
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

(9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who experienced the same injuries and seek, like other Class Members, compensation for Prestige Care's data security shortcomings. As such, their interests and the interests of their counsel are not inconsistent with those of other Class Members.

Further, Settlement Class Counsel has years of experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Boyd Dec. ¶¶ 3–5, and Exhibit A, resume of Settlement Class Counsel. Thus, Plaintiffs satisfy the requirement of adequacy.

### B.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id*.

Rule 23(b)(3) requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 12
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Plaintiffs' claims depend, first and foremost, on whether Prestige Care used reasonable data security measures to protect consumers' Personal Information. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'") (citation omitted).

Class certification here is also "superior to other available methods for . . . fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 13
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

document review too costly. *See Just Film*, 847 F.3d at 1123; *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because Plaintiffs seek to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 14
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Plaintiffs and the Class.

2    **C.    The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).**

3    In order for the court to preliminarily approve a class settlement and to direct that notice

4  be sent to class members, the parties must show that the court "will likely be able to (i) approve

5  the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

6  proposal." Fed. R. Civ. P. 23(e)(1)(B). *Tuttle v. Audiophile Music Direct Inc.,* No.C22-1081JLR,

7  2023 WL 3318699, at *3 (W.D. Wash. May 9, 2023). Rule 23(e) provides that a proposed class

8  action may be "settled, voluntarily dismissed, or compromised only with the court's approval."

9  Moreover, "[t]he parties must provide the court with information sufficient to enable it to

10 determine whether to give notice of the proposal to the class."  If the parties make a sufficient

11 showing that the Court will likely be able to "approve the proposal" and "certify the class for

12 purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to

13 all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e). Thus, notice

14 should be given to the class, and hence preliminary approval should be granted, where the Court

15 "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class

16 for settlement purposes. *Id.*

17   As a general matter, preliminary approval is appropriate if the settlement falls within the

18 range of possible approval. *Hunichen v. Antonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL

19 5854964, at *4 (W.D. Wash. Nov. 12, 2021). In sum, "the purpose of the preliminary approval

20 process is to determine whether there is any reason not to notify the class members of the

21 proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D.

22 688, 693 (D. Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at

23 this early juncture, Plaintiffs' and their counsel strongly believe that the resolution reached here

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 15
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

is in the Settlement Class's best interests.

To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1.    The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. Boyd Dec., ¶ 7–8. Plaintiffs contend that Prestige Care is liable for its negligent, unfair, and unlawful conduct under multiple causes of action. *See, e.g., Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650 (N.D. Cal. 2020) ("[T]ime and money [plaintiff] spent on credit monitoring in response to the Data Breach is

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 16
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    cognizable harm to support her negligence claim"); *Wallace v. Health Quest Sys., Inc.*, No. 20

2    CV 545 (VB), 2021 WL 1109727, at *8–15 (S.D.N.Y. Mar. 23, 2021) (upholding data breach

3    claims for negligence, breach of implied contract, breach of confidence and violations of New

4    York General Business Law); *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800-UU,

5    2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012) .

6         While Plaintiffs believe they have strong claims, they also understand that their success

7    is not guaranteed. The chances of prevailing on the merits are uncertain—especially where

8    significant unsettled questions of law and fact exist, which is common in data breach litigation.

9    "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa*

10   *Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing

11   *Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1

12   (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and

13   complex.")). Although nearly all class actions involve a high level of risk, expense, and

14   complexity, this is a particularly complex class action litigation. Given the obstacles and inherent

15   risks Plaintiffs face with respect to the novel claims in data breach class actions, including class

16   certification, summary judgment, and trial, the substantial benefits the Settlement provides favors

17   preliminary approval of the Settlement. Boyd Dec., ¶ 7.

18              2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

19         While Plaintiffs believe their case is a strong one, all cases, including this one, are subject

20   to substantial risk. This case involves a proposed class of approximately 45,000 individuals; a

21   complicated and technical factual overlay; and a motivated Defendant that has every reason to

22   vigorously defend against Plaintiffs' claims.

23         Although nearly all class actions involve a high level of risk, expense, and complexity—

---

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 17
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases).  Even cases of similar wide-spread notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmied, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 18
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

3.   The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the parties have not briefed and the Court has not yet certified, any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). While Plaintiffs are confident that this case is well suited for class certification, numerous obstacles to certification remain. Few data breach cases have proceeded forward to obtain a ruling certifying a contested class. The first to obtain certification was *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45–46 (M.D. Ala. Mar. 17, 2017), and a more recent certified contested class, *In re Marriott International Customer Data Securities Breach Litigation,* 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal, *see In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) and later recertified.  Thus, the dearth of direct precedent adds to the risks posed by continued litigation.

4.   The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible to make a claim up to $400 in Out-of-Pocket Losses, up to $100 in Lost Time, up to $5,000 in Consequential Damages and/or three years of Credit Monitoring and Identity Theft Protection Services OR (b) a $50 Alternative Cash Payment. This Settlement is a strong result for the Class, and as discussed below is in line with other settlements in cases involving data breaches of similar scope. Because the settlement amount here is similar

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 19
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

to other settlements reached and approved in similar cases, this factor reflects that the Settlement

is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8

(C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

In light of the difficulties and expenses Class Members would face pursuing individual claims,

and the likelihood that they might be unaware of their claims, this Settlement Amount is

appropriate. *See id*. Accordingly, this factor favors approval.

The Settlement value per class member here is on par with or exceeds that in other

exemplary data breach settlements.[2] Plaintiffs have achieved an excellent resolution for the

Settlement Class.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should

have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here,

Plaintiffs vigorously and aggressively gathered information that was available regarding Prestige

Care and the Data Incident—including publicly-available documents concerning announcements

---

[2] *See, e.g.*, *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million); *In re Capital One Consumer Data Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (Memo in Support of Final Approval), 1 ($190 million common fund settlement for a class of approximately 98 million); *Cochran v. Accellion, Inc., et al.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 Class Members); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 Class Members); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million Class Members); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million Class Members).

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 20
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    of the Data Incident and notice of the Data Incident to Plaintiffs and the Settlement Class. Boyd

2    Dec., ¶ 7–8. The parties also informally exchanged non-public information concerning the Data

3    Incident and the size of the Class in preparation for a successful mediation. *Id.*

4          Although the parties have not engaged in formal discovery, Class Counsel's collective

5    decades of experience in similar types of privacy and data protection cases provided substantive

6    knowledge to enable Class Counsel to represent Plaintiffs' and Class Members' interests without

7    expending hundreds of hours and enormous financial resources to come up to speed on the

8    subject area. *Id.*, ¶ 8. "[T]he efficiency with which the Parties were able to reach an agreement

9    need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*,

10   No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017).

11   Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

12                    6.   The Experience and Views of Counsel

13         Class Counsel has substantial experience litigating complex class cases of various types,

14   including data breach cases such as this one. *See* Boyd Dec. ¶¶ 3–5 & Ex. A thereto. Having

15   worked on behalf of the putative class since the Data Incident was first announced, evaluated the

16   legal and factual disputes, and dedicated significant time and monetary resources to this

17   litigation, proposed Class Counsel endorse the Settlement without reservation. *Id.* ¶ 9. A great

18   deal of weight is accorded to the recommendation of counsel, who are most closely acquainted

19   with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, 2017 WL 1424636,

20   at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523,

21   528 (C.D. Cal. 2004). Thus, this factor supports approval.

22                    7.   Governmental Participants.

23         There is no governmental participant in this matter. This factor is neutral.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 21
Case No. 3:24-cv-05133-BHS

8.  <u>The Reaction of the Class Members to the Proposed Settlement</u>

Because notice has not yet been given, this factor is not yet implicated; however, the named Plaintiffs support the Settlement. Boyd Dec., ¶ 20.

9.  <u>Lack of Collusion Among the Parties</u>

The parties negotiated a substantial Settlement, as outlined above. The parties did not commence discussion of fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the fees were negotiated at arm's-length under the direction of a third party neutral mediator, the Hon. Ron B. Leighton, who has extensive experience in handling class action cases and data breach class action cases. Therefore, the Court can be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement  process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

10.  <u>The Settlement Treats Settlement Class Members Equitably</u>

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT – 22
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union,* No. 3:21-CV-05148-LK, 2023 WL 4315117 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. While Plaintiffs have been permitted to seek approval of a service award from this Court, as will be explained in detail in Plaintiffs' Fee Motion, the award of $2,500 per Plaintiff is in line with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. *See, e.g.*, *Roe v. Frito-Lay, Inc.,* No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving service awards of $5,000).

### D.    The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id.*

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—EisnerAmper—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member. Prior to sending the Postcard Notice, EisnerAmper will check all mailing addresses against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information is up-to-date and accurately formatted for mailing.[3]S.A. ¶ 3.2.1. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the

---

[3] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 24
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Settlement. *Id.* Exs. A, B, and C.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website. The Settlement Website will also provide the ability for Settlement Class Members to file an online Claim Form. In addition, the Settlement Website also include links to relevant filings including but not limited to the operative complaint; preliminary approval motion and order; motion for attorneys' fees, costs, and service awards; and motion for final approval. S.A.. ¶ 3.2.3. The Claims Administrator will also make a toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. *Id.* ¶ 3.2.4.

Plaintiffs have negotiated a notice program that is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Because this notice plan ensures that Settlement Class Members' due process rights are amply protected, it should be approved. *See Hartranft v. TVI, Inc.*, No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.).

### E.      Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint EisnerAmper to serve as the Claims

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 25
Case No. 3:24-cv-05133-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   Administrator. EisnerAmper is a well-respected third-party administrator with a trusted and

2   proven track record of supporting class action administrations. Boyd Dec. ¶¶ 14.

3       **F.      Appointment of Settlement Class Counsel**

4       Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly

5   and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this

6   determination, courts generally consider the following attributes: the proposed class counsel's

7   (1) work in identifying or investigating potential claims, (2) experience in handling class actions

8   or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the

9   applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P.

10  23(g)(1)(A)(i–iv).

11      Here, proposed Class Counsel have extensive experience prosecuting class actions and

12  other complex cases, and specifically data breach cases. *See* Boyd Dec. ¶ 3-5, Ex. A (firm

13  resumes). All Plaintiffs' Counsel concur that having a single person designated as Class Counsel

14  is a streamlined leadership structure that is appropriate for and commensurate with the needs of

15  this action. Accordingly, the Court should appoint Kaleigh N. Boyd of Tousley Brain Stephens

16  PLLC as Class Counsel.

17  **VII.    CONCLUSION**

18      Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide

19  Class Members with both significant monetary and equitable relief. The Settlement should be

20  approved and Notice should be ordered to issue to the class. For all the above reasons, Plaintiffs

21  respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval

22  of Class Action Settlement.

23      I certify that this motion contains 8,178 words in compliance with the local civil rules.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 26
Case No. 3:24-cv-05133-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2   Date: November 25, 2024                    Respectfully Submitted,

3                                              **TOUSLEY BRAIN STEPHENS PLLC**

4                                              By: */s/ Kaleigh N. Boyd*
                                               Kaleigh N. Boyd, WSBA #52684
                                               1200 Fifth Avenue, Suite 1700
5                                              Seattle, WA 98101-3147
                                               Telephone: (206) 682-5600
6                                              kboyd@tousley.com

7                                              Gary E. Mason*
                                               Danielle L. Perry*
8                                              Lisa A. White*
                                               **MASON LLP**
9                                              5335 Wisconsin Avenue, NW, Suite 640
                                               Washington, DC 20015
10                                             Telephone: (202) 429-2290
                                               gmason@masonllp.com
11                                             dperry@masonllp.com
                                               lwhite@masonllp.com

12                                             Gary M. Klinger*
                                               **MILBERG COLEMAN BRYSON**
13                                             **PHILLIPS GROSSMAN LLC**
                                               227 W. Monroe Street, Suite 2100
14                                             Chicago, IL 60606
                                               Telephone: (866) 252-0878
15                                             gklinger@milberg.com

16                                             Philip J. Krzeski*
                                               **CHESTNUT CAMBRONNE PA**
17                                             100 Washington Ave. S., Suite 1700
                                               Minneapolis, MN 55401
18                                             Telephone: (612) 339-7300
                                               pkreszki@chestnutcombronne.com

19
                                               Michael C. Submit, WSBA No. 29189
20                                             **FRANK FREED SUBIT & THOMAS**
                                               705 2nd Ave., Suite 1200
21                                             Seattle, WA 98104-1729
                                               Telephone: (206) 682-6711
22                                             msubit@frankfreed.com

23                                             *Attorneys for Plaintiffs and the Proposed Classes*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 27
Case No. 3:24-cv-05133-BHS